IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINORITY TELEVISION PROJECT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK L.L.C.,<br><br>Defendant. | Case No. 21-cv-02214-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITHOUT FURTHER LEAVE TO AMEND** |

Before the Court is defendant Dish Network L.L.C.'s ("Dish") Motion, filed August 27, 2021, "to Dismiss First Amended Complaint." Plaintiff Minority Television Project, Inc. ("Minority") has filed opposition, to which Dish has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In its First Amended Complaint ("FAC"), Minority alleges that it is a "non-profit corporation" operating KMTP-TV, an "educational noncommercial television station" (see FAC ¶ 36), that Dish is a "satellite television company" (see FAC ¶ 27) "provid[ing] satellite television service to . . . subscribers in San Francisco and elsewhere in this judicial district" (see FAC ¶ 22), and that, under regulations promulgated by the Federal Communications Commission ("FCC"), a noncommercial television station may "require a satellite broadcast company to carry its signal," a requirement known as "mandatory carriage" (see FAC ¶ 32; see also FAC ¶ 33 (alleging, "by October 1st of the year preceding each three-year carriage cycle," a noncommercial television station that "elect[s] mandatory carriage with the satellite carrier serving [its] local market" will have

---

[1] By order filed October 20, 2021, the Court took the matter under submission.

its signal carried).)

Minority alleges that, although "[p]rior to 2018," Dish had "carried the television broadcast signal of KMTP" (see FAC ¶ 25), Dish did not carry KMTP's signal "for the three-year election that began January 1, 2018" (see FAC ¶ 36), a decision the FCC found "permissible," given's Minority's failure to request mandatory carriage in the manner prescribed in then-governing FCC regulations (see FAC ¶ 41).

Minority also alleges, however, that, with respect to the three-year cycle beginning January 1, 2021, Minority filed a mandatory carriage request on behalf of KMTP in the manner required by FCC regulations (see FAC ¶¶ 12, 33), but Dish "fail[ed] to carry" KMTP's broadcast signal (see FAC ¶ 1).  According to Minority, Dish's failure to carry KMTP's signal beginning January 1, 2021, constitutes a violation of 47 C.F.R. § 76.66, which regulation requires a satellite carrier to "carry upon request the signals of all television broadcast stations located within the local market." See 47 C.F.R. § 76.66(b)(1).

Based on the above allegations, Minority asserts a single claim for relief, specifically, a claim under 47 U.S.C. § 401, which provides that, "[i]f any person fails to obey an order of the [FCC]," the "party injured thereby . . . may apply to the appropriate district court of the United States for enforcement of such order." See 47 U.S.C. § 401(b).

## DISCUSSION

By order filed July 21, 2021, the Court granted Dish's motion to dismiss the initial complaint, finding Minority had not alleged sufficient facts to support a finding that Dish failed to comply with § 76.66.  In particular, the Court found Minority did not allege facts sufficient to support a finding that Dish had an obligation to carry KMTP's signal, as the initial complaint did not allege Minority had, as required by § 76.66(d)(1)(iii), sent "notice of its election" to "the email address provided by the satellite carrier and carbon copied to ElectionNotices@FCC.gov." See 47 C.F.R. § 76.66(d)(1)(iii).  By that same order, Minority was afforded leave to amend, which Minority subsequently did.

2

In its FAC, Minority does not allege that it complied with the notice requirements set forth in § 76.66(d)(1)(iii), but, rather, that it was not required to do so. (See FAC ¶¶ 9-10.) In seeking dismissal, Dish argues § 76.66(d)(1)(iii) is applicable to Minority. As set forth below, the Court agrees with Dish.[2]

Pursuant to statute, a "satellite carrier" is required to "carry upon request the signals of all television broadcast stations located within [the] local market" in which those stations operate. See 47 U.S.C. § 338(a)(1). To "assure compliance" with that obligation, see 47 U.S.C. § 338(a)(2), the FCC has promulgated regulations, including § 76.66, which regulations, as amended in 2019, have been explained by the FCC in a document titled "Rules and Regulations, FCC, Electronic Delivery of MVPD Communications; Modernization of Media Regulation Initiative" (hereinafter, "Report and Order"). See 2019 WL 4077129, 84 FR 45659 (August 30, 2019).

As explained in detail in the Report and Order, the FCC amended § 76.66 and other regulations in 2019 to "modernize [its] carriage election notice rules by permitting broadcasters [1] to post their carriage elections online, and [2] to send notices to [satellite carriers] only when changing their carriage election status." See id. at 45659.[3] The first of those amendments, as applicable to "noncommercial television stations," is set forth in 47 C.F.R. § 73.3527(e)(12), which requires any such station "requesting mandatory carriage . . . [to] place a copy of such request in its public file." See 47 C.F.R. § 73.3527(e)(12). The second of those amendments is set forth in § 76.66(d)(1)(iii), which requires "[a] station [to] send a notice of its election to a satellite carrier only if changing its election with respect to one or more of the markets served by that carrier," and requires "[s]uch notice . . . be sent to the email address provided by the satellite carrier and carbon copied to ElectionNotices@FCC.gov. See 47 C.F.R. § 76.66(d)(1)(iii).

---

[2] In light of this finding, the Court does not consider herein Dish's alternative argument that § 76.66 does not constitute an "order" for purposes of § 401.

[3] Prior to the above-referenced amendments, a broadcaster was required to send its election notice by certified mail. See id. at 45660.

3

Here, Minority argues, it was only required to comply with the first of the above-referenced regulations, and with respect thereto, relies on its allegation that it "timely . . . plac[ed] a notice on its online public file." (See FAC ¶ 11). Minority argues that the second regulation applies only to commercial stations, and, consequently, it was not required to send notice of its election "to the email address provided by the satellite carrier." See 47 C.F.R. § 76.66(d)(1)(iii).

As Dish points out, however, nothing in § 76.66 or any other regulation limits application of § 76.66(d)(1)(iii) to commercial stations. Rather, § 76.66(d)(1)(iii) applies to "[a] station," a term that encompasses commercial and noncommercial stations. See 47 C.F.R. § 76.66(a)(4) (defining "television broadcast station" as "an over-the-air commercial or noncommercial television broadcast station licensed by the [FCC]").

Moreover, the FCC, in enacting the present version of § 76.66(d)(1)(iii), made clear it applies to "NCEs," i.e., noncommercial educational stations, see Report and Order, 84 FR at 45660, where the station has not been carried by the satellite provider in the prior three-year election cycle. Specifically, in explaining how NCEs are affected by its 2019 amendments, the FCC stated:

> We will require each NCE to make a request for [satellite] carriage via the placement of a carriage statement into its public file no later than the next carriage election deadline of October 1, 2020. New requests for carriage by NCE stations must be sent to [a satellite carrier's] "carriage election-specific" email address and retained in the station's public file "for the duration of any period to which the request applies." When the new request is from an existing NCE station that is not being carried by an existing [satellite provider], the NCE must email a copy of its request by the next carriage election deadline . . . .

See id. at 45663 (emphasis added). In other words, the only NCEs exempt from the notice requirement set forth in § 76.66(d)(1)(iii) are NCEs "currently being carried," see id. at 45662 (providing "NCE stations that are currently being carried will place only a one-time [satellite] carriage request in their public file"), a category in which Minority was not included on October 1, 2020, given its acknowledgement Dish had ceased carrying KMTP-TV on January 1, 2018. (See FAC ¶ 48 (alleging Dish "has not carried KMTP-TV's

signal at any time after December 31, 2017").)[4]

Accordingly, as the requirement set forth in § 76.66(d)(1)(iii) applies to Minority, and Minority has alleged it did not comply therewith, the FAC is subject to dismissal.

## CONCLUSION

For the reasons stated above, Dish's motion to dismiss is hereby GRANTED, and the First Amended Complaint is hereby DISMISSED without further leave to amend.

**IT IS SO ORDERED.**

Dated: November 24, 2021

MAXINE M. CHESNEY
United States District Judge

---

[4] To the extent Minority relies on dicta in an FCC order identified in the FAC as "MB 2020" (see FAC ¶ 13), the Court finds Minority's reliance thereon is, for the reasons stated in the Court's order dismissing the initial complaint, unavailing.